18-1593 (L)
*United States v. Hart, et al.*

# UNITED STATES COURT OF APPEALS
# FOR THE SECOND CIRCUIT

## SUMMARY ORDER

**RULINGS BY SUMMARY ORDER DO NOT HAVE PRECEDENTIAL EFFECT.   CITATION TO A SUMMARY ORDER FILED ON OR AFTER JANUARY 1, 2007, IS PERMITTED AND IS GOVERNED BY FEDERAL RULE OF APPELLATE PROCEDURE 32.1 AND THIS COURT'S LOCAL RULE 32.1.1. WHEN CITING A SUMMARY ORDER IN A DOCUMENT FILED WITH THIS COURT, A PARTY MUST CITE EITHER THE FEDERAL APPENDIX OR AN ELECTRONIC DATABASE (WITH THE NOTATION "SUMMARY ORDER").   A PARTY CITING TO A SUMMARY ORDER MUST SERVE A COPY OF IT ON ANY PARTY NOT REPRESENTED BY COUNSEL.**

At a stated term of the United States Court of Appeals for the Second Circuit, held at the Thurgood Marshall United States Courthouse, 40 Foley Square, in the City of New York, on the 29th day of April, two thousand twenty-one.

PRESENT:
> DENNY CHIN,
> RICHARD J. SULLIVAN,
> > *Circuit Judges,**
> DENISE COTE,
> > *District Judge.*♦

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - -x

| | |
|---|---|
| UNITED STATES OF AMERICA, | 18-1593 (L) |
| *Appellee,* | 18-1731 (C) |
| | 18-1783 (C) |
| v. | 18-1925 (C) |

---

\*   Judges Ralph K. Winter and Peter W. Hall were originally members of this panel.   After their deaths, Judges Chin and Sullivan were assigned to the panel.

♦   Judge Denise Cote of the United States District Court for the Southern District of New York, sitting by designation.

TROJAN HART, AKA RED, AKA IRON MAN, OMAR
SHARPE, AKA DUMMY, RASHAWN DAVIDSON,
AKA RAY RAY,

      *Defendants-Appellants.*[#]

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - -x

| | |
|---|---|
| For Appellee United States: | HAGAN SCOTTEN, Assistant United States Attorney (Anden Chow, Karl Metzner, Assistant United States Attorneys, *on the brief*), *for* Audrey Strauss, United States Attorney for the Southern District of New York, New York, New York. |
| For Defendant-Appellant Hart: | BRUCE R. BRYAN, ESQ., Syracuse, New York. |
| For Defendant-Appellant Sharpe: | ROBIN CHRISTINE SMITH, ESQ. (Leean Othman, Esq., *on the brief*), New York, New York. |
| For Defendant-Appellant Davidson: | DANIEL M. PEREZ, ESQ., Newton, New Jersey. |

Appeal from judgments of the United States District Court for the Southern District of New York (Berman, *J.*).

**UPON DUE CONSIDERATION, IT IS HEREBY ORDERED, ADJUDGED, AND DECREED** that the judgments of the district court are **AFFIRMED** except in one respect, as set forth below.

Defendants-Appellants Trojan Hart, Omar Sharpe, and Rashawn Davidson (collectively, "defendants") appeal from judgments of conviction entered May 24, 2018,

---

[#] The Clerk of Court is respectfully directed to amend the official caption in this case to conform to the caption above.

2

May 31, 2018, and May 24, 2018, respectively, following a jury trial at which they were found guilty of conspiring to distribute narcotics from 2011 through 2015 as part of a drug gang known as the "213 Conspiracy" in the Bronx.   Sharpe was also convicted of possessing with intent to distribute heroin and using and possessing firearms, during and in furtherance of the conspiracy, and Davidson was also convicted of possessing with intent to distribute 28 grams or more of cocaine base.   Hart and Davidson were sentenced principally to 165 months' imprisonment.   Sharpe was sentenced principally to 240 months' imprisonment.   We assume the parties' familiarity with the underlying facts, procedural history of the case, and arguments on appeal.

## I.    Davidson's Suppression Motion

Detective Jeremiah Williams and Officer Michael Whelan arrested Davidson for possessing a bag of crack cocaine.   Davidson moved to suppress that evidence on the ground that the officers lacked probable cause to arrest him.   Following a hearing, the district court denied the motion.

When considering a district court's denial of a suppression motion, "we construe the evidence in the light most favorable to the government, and review the district court's factual findings for clear error, and its legal conclusions *de novo*."   *United States v. Garcia*, 339 F.3d 116, 118–19 (2d Cir. 2003).

3

First, Davidson argues that the district court erred in crediting Williams's and Whelan's testimony, pointing out several supposed inconsistencies. We find no meaningful inconsistency with respect to the testimony Davidson highlights and therefore decline to disturb the district court's credibility finding.

Second, Davidson argues that the circumstances of his arrest do not give rise to probable cause. We disagree for substantially the reasons stated by the district court, including that Williams saw Davidson pull a plastic bag out of the waistband of his pants while standing with another man on the sidewalk; Davidson, upon making eye contact with Williams, looked shocked and put the plastic bag back into his pants; Williams could see a white substance in the portion of the plastic bag sticking out of Davidson's waistband; and Whelan saw a bulge in his pants. *See United States v. Valentine*, 539 F.3d 88, 93 (2d Cir. 2008) ("Probable cause to arrest a person exists if the law enforcement official, on the basis of the totality of the circumstances, has sufficient knowledge or reasonably trustworthy information to justify a person of reasonable caution in believing that an offense has been or is being committed by the person to be arrested." (internal quotation marks omitted)); *United States v. Canieso*, 470 F.2d 1224, 1228 (2d Cir. 1972) ("When an experienced narcotics agent has seen a quantity of bags containing white powder in the possession of the suspects, little, if anything, more is needed to show probable cause.").

4

## II.    The Restraints on Sharpe and Hart

Hart and Sharpe argue that their due process rights were violated when the district court authorized the marshals to restrain them with leg shackles during trial.    Physical restraints may be used during trial "only when the court has found those restraints to be necessary to maintain safety or security; but the court must impose no greater restraints than are necessary, and it must take steps to minimize the prejudice resulting from the presence of the restraints."    *United States v. Haynes*, 729 F.3d 178, 189 (2d Cir. 2013) (internal quotation marks omitted).    As long as the district court has not improperly delegated the decision to restrain a defendant, its decision is reviewable for abuse of discretion.    *Davidson v. Riley*, 44 F.3d 1118, 1124 (2d Cir. 1995).    We find no abuse of discretion in the district court's decision to place leg restraints on Hart and Sharpe.

Hart argues that the district court should not have resorted to the leg restraints without first trying other methods, including a warning that a defendant would be held in contempt, or finding that other methods would be futile.    But neither *Illinois v. Allen*, 397 U.S. 337 (1970), nor any other authority cited by Hart requires a district judge to try other methods first or to use the words "necessary as a last resort" when stating on the record that leg shackles are necessary.

Hart also contends that the district court impermissibly delegated to the marshals the decision to shackle the defendants.    Although the district judge at first indicated that

5

he was deferring to the marshals on the issue, the following day he entered a written statement into the record that made it clear that his decision to shackle the defendants was based on his independent judgment. Hart Sp. App'x 3. Even if there was an insufficient basis for restraining Hart and Sharpe on the first day they were restrained, we conclude that the error was harmless in light of the independent decision made by the judge the following morning and the measures taken from the outset to shield the restraints from the jury's view.

## III. Evidentiary Rulings

We review a district court's evidentiary rulings for abuse of discretion. *United States v. Rosemond*, 841 F.3d 95, 107 (2d Cir. 2016).

### A. Cross-Examination Regarding Officers' Disciplinary Proceedings

The district court precluded questioning of Williams and Whelan concerning past disciplinary proceedings against them that were unrelated to this case. The district court did not abuse its discretion in disallowing this evidence, because the officers' disciplinary violations had "little, if any, plausible relevance" to their credibility and offered "nothing of value with respect to [the officers'] motivation to lie about the circumstances" of this case. *United States v. Lawes*, 292 F.3d 123, 131-32 (2d Cir. 2002).

### B. Sharpe's 2009 Arrest and Statement About the Firearm

Sharpe challenges the admission of his 2009 arrest and a statement he made in

connection with that arrest.    The arrest was made in an apartment within "213

Conspiracy" territory, where police officers observed several individuals, including Sharpe

and other defendants in this case, in possession of drugs.    The officers also recovered an

unloaded firearm.    The officer who arrested Sharpe testified that later, when the arrestees

were in the holding cell at the station, Sharpe said that the officers "were lucky the gun

wasn't loaded because if it would have . . . he would have bust our melon."    Tr. 754.    The

officer understood that to mean that Sharpe would have shot the officers in the head.

On appeal, Sharpe argues that this evidence should have been excluded under Fed.

R. Evid. 403 and 404(b).    We disagree with regard to evidence of the arrest.    We have

long recognized that "it is within the [trial] court's discretion to admit evidence of prior

acts to inform the jury of the background of the conspiracy charged, in order to help

explain how the illegal relationship between participants in the crime developed, or to

explain the mutual trust that existed between coconspirators."    *United States v. Diaz*, 176

F.3d 52, 79 (2d Cir. 1999) (alteration in original) (quoting *United States v. Rosa*, 11 F.3d 315,

334 (2d Cir. 1993)).    In light of the circumstances of the arrest, we cannot say that its

admission was more prejudicial than probative.

The subsequent statement about the firearm, however, is not clearly direct evidence

of the conspiracy nor plainly admissible under Fed. R. Evid. 404(b).    But even assuming it

was error to admit the statement, we conclude that any such error was harmless because

7

there was ample evidence that Sharpe possessed firearms in furtherance of the conspiracy. *See United States v. Snow*, 462 F.3d 55, 62–63 (2d Cir. 2006) (finding a sufficient nexus between firearm possession and drug conspiracy exists where "the charged weapon is readily accessible to protect drugs, drug proceeds, or the drug dealer himself"). The risk of unfair prejudice was low because the jury heard evidence that Sharpe actually shot at people on more than one occasion.

### C. Facebook Post Describing Sharpe as "the Savage"

At trial, the government offered a Facebook post by one of defendants' co-conspirators in which Sharpe and Davidson were pictured together with the caption "Free the plug ray ray out the #fedz and the savage dumout miss my n****s." Gov't Add. 14. Another co-conspirator, Manny McKenzie, explained that "ray ray" referred to Davidson and "plug" meant that Davidson was "the connect for crack." Tr. 113, 198–99. McKenzie also explained that "dum" referred to Sharpe, and "savage" meant "[s]omeone who puts in work," further explaining that "work" meant "violence—shooting, stabbing, fighting." Tr. 241–42.

Sharpe argues that this Facebook post should not have been admitted because it is more prejudicial than probative. We disagree. The Government's theory of the case with respect to Davidson and Sharpe was that Davidson was the drug supplier and Sharpe was a retail dealer who committed acts of violence for the conspiracy. The Facebook post

8

provided strong support for that theory.    Any inflammatory effect of the word "savage" was mitigated by the co-conspirator's explanation of that term's specific meaning.[1]

### D. Testimony About Hart's Civil Lawsuit Against Officer Michael Gonzales

In 2014, police officers, including Officer Michael Gonzalez,[2] arrested Hart at a party, resulting in serious injuries to Hart and, according to the officers, to Gonzales. Hart brought a civil suit against Gonzalez and others, which was pending at the time of the criminal trial.    The district court did not allow testimony about Hart's civil suit, reasoning that it "ha[d] nothing to do with this case" and would create "a trial within a trial."    Hart App'x 157.

On appeal, Hart argues that the district court abused its discretion by denying him the opportunity to pursue the defense theory that Gonzales and other officers were "biased and influenced cooperating co-defendants to implicate him in retaliation for the civil lawsuit."    Hart Br. 74.    We are not persuaded.    None of the officers involved in the 2014 arrest testified against Hart, and there was thus no need for Hart to impeach their

---

[1]    In a Rule 28(j) letter, Sharpe argues that the facts in this case are similar to those in *United States v. Nolan*, 956 F.3d 71 (2d Cir. 2020).    This argument is unpersuasive: the two photographs depict different things, have different captions, and were used by the Government for different purposes.

[2]    Gonzales was involved in the events underlying this prosecution only to the extent that he participated in the execution of a search warrant, during which three of Hart's co-defendants were arrested.    Hart was not present.

credibility at trial.[3]   As for Hart's theory that Gonzales might have improperly influenced

McKenzie, a cooperating witness whom Gonzales arrested in 2015, Hart's counsel

questioned McKenzie and Gonzales about their interaction, but that line of questioning

resulted in no evidence suggesting that Gonzales exerted such influence.   The district

court therefore was well within its discretion to exclude testimony about Hart's civil suit.

*See United States v. Al Kassar*, 660 F.3d 108, 124 (2d Cir. 2011).

### E. Stipulations

Hart and the Government negotiated two stipulations that ultimately were not

entered into evidence: (1) a stipulation to the authenticity of recordings made during the

wiretap of McKenzie's phone, and (2) a stipulation to the total number of calls between

McKenzie and Hart during a certain time period.   At trial, Hart initially objected to the

two stipulations, but when the government proposed to put on relevant, incriminating

evidence through live witnesses, Hart's counsel argued that the stipulations should be

entered in lieu of the testimony.   The district court excluded the stipulations, and Hart

argues that the district court erred in doing so.

We need not decide whether it was error in the circumstances here for the district

court to reject the stipulations, because any error was harmless.   To be sure, the testimony

introduced as a result of the district court's exclusion of the stipulations was incriminating.

---

[3]   Gonzales testified as a defense witness.

10

But the evidence of Hart's involvement in the conspiracy was overwhelming: three co-conspirators testified about his involvement as a supplier, a police officer caught Hart with 35 bags of heroin, and Hart was repeatedly intercepted on the wiretap of McKenzie's phone. We can conclude beyond a reasonable doubt that the jury would have convicted Hart of the narcotics conspiracy charge even without the live testimony reciting Hart's incriminating statement.

## IV.    Sharpe's Ineffective Assistance of Counsel Claim

Sharpe asserts a claim of ineffective assistance of counsel on the ground that his trial counsel should have objected to the admission of testimony regarding three uncharged firearm incidents. Sharpe's ineffective assistance claim is not amenable to resolution on direct appeal, however, because, contrary to Sharpe's assertion, his trial counsel's ineffectiveness is not "beyond any doubt" based on the record before the Court. Sharpe Br. 47; *see Massaro v. United States*, 538 U.S. 500, 504 (2003).    Sharpe may raise the issue later pursuant to 28 U.S.C. § 2255.

## V.    Jury Instructions

"We review challenged jury instructions *de novo* but will reverse only if all of the instructions, taken as a whole, caused a defendant prejudice." *United States v. Applins*, 637 F.3d 59, 72 (2d Cir. 2011) (internal quotation marks omitted).    "A jury instruction is erroneous if it misleads the jury as to the correct legal standard or does not adequately

11

inform the jury on the law." *United States v. Roy*, 783 F.3d 418, 420 (2d Cir. 2015) (internal quotation marks omitted). In reviewing a jury instruction, we consider "the instructions as a whole to see if the entire charge delivered a correct interpretation of the law." *Al Kassar*, 660 F.3d at 127 (internal quotation marks omitted).

## A. Davidson's Adverse Inference Instruction

Davidson argues that the district court should have given an adverse inference instruction based on the fact that Detective Williams threw away his phone, which contained a video of Davidson's arrest, after it was "run over" and "smashed." Tr. 442-43. But Davidson waived this argument when his counsel made a "conscious tactical decision" not to submit a request for the adverse inference instruction below. *United States v. Kon Yu-Leung*, 51 F.3d 1116, 1123 (2d Cir. 1995); *see United States v. Spruill*, 808 F.3d 585, 597 (2d Cir. 2015) ("[W]aiver is accomplished by intent . . . ." (internal quotation marks omitted)).

## B. Response to Jury Note

During deliberations, the jury sent a note saying: "Is the <u>amount</u> of the narcotic based on the <u>entire</u> conspiracy or just based on that individual's involvement?" Hart App'x 207. The note also indicated that the jury "reread" but sought "clarification" of page 19 of the court's instruction regarding whether the drug quantity was "reasonably foreseeable" to each defendant. Hart App'x 207. All parties agreed that, in response, the district court should direct the jury to two paragraphs of its instruction, which explained

12

how to determine the relevant amount for each defendant.   The Government

recommended just those two paragraphs, while the defense wanted the court to include

other portions of the original instruction as well, including the definition of "[r]easonably

foreseeable."   Tr. 1754.   The court directed the jury's attention only to the two

paragraphs.

Hart argues that the district court gave an "imbalanced" and inadequate

supplemental instruction by failing to include the sentence defining "reasonably

foreseeable."   Hart Br. 70.   He asserts that, as a result, it was "impossible" for the jury to

determine correctly whether Hart "met the threshold drug quantity," such that his

conviction should be reversed.   Hart Br. at 71.   We are not persuaded.   First, there was

no "threshold drug quantity" needed to convict Hart of narcotics conspiracy.   *See* 21

U.S.C. §§ 841(b)(1)(C), 846.   Second, given that there was no objection to the initial jury

charge and the supplemental charge did nothing more than reference the initial charge,

Hart has not shown that the district court committed reversible error.   *See Al Kassar*, 660

F.3d at 127.

## VI.   Sentencing Issues

### A.  Davidson

Davidson challenges the procedural reasonableness of his sentence of 165 months'

imprisonment.   Specifically, Davidson contends that certain prior convictions should

have been counted as relevant conduct rather than prior sentences. In determining Davidson's Criminal History Category, the U.S. Probation Department ("Probation") included two points for a 2006 state drug conviction and three points for a 2010 federal drug conviction. Both convictions arose from Davidson's drug activities in the 213th Street area.

Davidson argues that the 2010 conviction should be considered relevant conduct because the district court ruled that the conviction was admissible at trial as direct proof of the present conspiracy. This argument conflates the evidentiary concept of relevance with the specific meaning of "relevant conduct" within the Sentencing Guidelines. *See* U.S.S.G. §§ 1B1.3(a)(1), 1B1.3(a)(2), 4A1.2(a)(1), 4A1.2 Application Note 1. Although the 2010 conviction is relevant to the issue of Davidson's membership in the 213 Conspiracy, it does not count as conduct that is part of the instant offense because it occurred before the period covered by the indictment in this case. *See* U.S.S.G. § 1B1.3 Application Note 5(C); *cf. United States v. Thomas*, 54 F.3d 73, 84 (2d Cir. 1995) (prior conviction that was admitted at trial might constitute relevant conduct because, among other reasons, it was for conduct that occurred "a few months after the period covered by the present indictment").

Davidson also challenges the substantive reasonableness of his sentence. He argues that the district court failed to give sufficient consideration to his "horrific upbringing" and the "nurturing side" of his character. Davidson Br. 67, 69. The district

14

court gave due consideration, however, to Davidson's childhood circumstances, including the murder/suicide of his parents, and to the letters of support that described Davidson's positive attributes. Davidson's below-Guidelines sentence falls "within the range of permissible decisions." *United States v. Rigas*, 490 F.3d 208, 238 (2d Cir. 2007) (internal quotation marks omitted).

### B. Hart

Hart challenges only the substantive reasonableness of his sentence, arguing, *inter alia*, that the district court should have given greater weight to mitigating factors. The district court thoughtfully considered Hart's traumatic childhood circumstances, his medical issues, his community engagement, his statement at sentencing, and the letters of support from his family members. In light of those factors, the court imposed a sentence well below the undisputed Guidelines range. The district court did not exceed the bounds of its discretion in imposing the 165-month sentence.

## VII. Conditions of Supervised Release

### A. Standard Condition of Supervised Release No. 12

Defendants challenge the constitutionality of one of their conditions of supervised release, which provides:

> If the probation officer determines that you pose a risk to another person (including an organization), the probation officer may require you to notify the person about the risk and you must comply with that instruction. The probation officer may contact the person and confirm that you have notified

15

the person about the risk.

Hart Sp. App'x 15. After defendants were sentenced, we held in another case that the aforementioned condition is impermissibly vague and affords too much discretion to probation officers. *United States v. Boles*, 914 F.3d 95, 111–12 (2d Cir. 2019). In light of *Boles*, the United States District Court for the Southern District of New York issued a standing order "vacating and eliminating" what it terms "Old Standard Condition #12," and replacing it with a new standard condition, which provides:

> If the probation officer determines, based on your criminal record, personal history or characteristics, that you pose a risk to another person (including an organization), the probation officer, with the prior approval of the Court, may require you to notify the person about the risk and you must comply with that instruction. The probation officer may contact the person and confirm that you have notified the person about the risk . . . .

Gov't Br. Add. 21–22. Defendants argue that the new condition is still unconstitutionally vague.

We need not reach this issue because there is no indication that defendants are subject to the new condition of release, which is contingent on the probation officer making a determination of risk and the district court approving the requirement of notification. *See* Gov't Br. Add 22 (imposing New Standard Condition #12 only where Probation recommends it to the court). As we previously held in connection with a similar condition of supervised release, unless and until a condition of supervised release is actually imposed, the inquiry remains "an abstraction" unripe for appellate review.

16

*United States v. Traficante*, 966 F.3d 99, 106 (2d Cir. 2020) (rejecting an identical challenge because it, too, was unripe).

**B. Substance Abuse Treatment Condition**

Sharpe challenges the district court's imposition of a special condition of supervised release that required him to participate in a substance abuse treatment and testing program "if deemed necessary by probation." Sharpe App'x 124. Sharpe argues that the district court impermissibly delegated to Probation its sentencing authority by allowing Probation to determine whether it is necessary for Sharpe to participate in a substance abuse program.[4]

Sharpe's argument has merit. *See United States v. Peterson*, 248 F.3d 79, 85 (2d Cir. 2001) (vacating condition of release because, if defendant was "required to participate in a mental health intervention only if directed to do so by his probation officer, then this special condition constitutes an impermissible delegation of judicial authority to the probation officer"); *Matta*, 777 F.3d at 123 (district court impermissibly delegated sentencing authority by allowing Probation to determine whether defendant should undergo inpatient or outpatient drug treatment as a condition of release). The substance abuse treatment condition imposed on Sharpe is an impermissible delegation of the

---

[4] Sharpe did not object to that condition at sentencing. Under these circumstances, we apply "a 'relaxed' form of plain error review." *United States v. Matta*, 777 F.3d 116, 121 (2d Cir. 2015).

district court's sentencing authority.   We therefore vacate this aspect of Sharpe's sentence and remand for resentencing in this respect only.

## CONCLUSION

We have considered defendants' remaining arguments and find them to be without merit.   The judgments of the district court are **AFFIRMED** except that the judgment against Sharpe is **VACATED** with respect to the substance abuse treatment condition and otherwise **AFFIRMED**.   The case is **REMANDED** for resentencing as to Sharpe and only to the extent set forth above.

FOR THE COURT:
Catherine O'Hagan Wolfe, Clerk of Court