# United States Court of Appeals
## For the First Circuit

---

No. 12-1896

UNITED STATES,

Appellee,

v.

PAUL V. BURDULIS,

Defendant, Appellant.

---

APPEAL FROM THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MASSACHUSETTS

[Hon. F. Dennis Saylor IV, U.S. District Judge]

---

Before

Thompson, Circuit Judge,
Souter, Associate Justice,[*]
Kayatta, Circuit Judge.

---

Judith H. Mizner, Assistant Federal Public Defender, for appellant.
Elana Nightingale Dawson, with whom Carmen M. Ortiz, United States Attorney, was on brief, for appellee.

---

May 23, 2014

---

[*] Hon. David H. Souter, Associate Justice (Ret.) of the Supreme Court of the United States, sitting by designation.

**KAYATTA, Circuit Judge**.  Paul Burdulis was convicted of possessing child pornography in violation of 18 U.S.C. § 2252(a)(4)(B) after the police found such pornography on a thumb drive (a kind of data storage device) in his home.  To show that the pornography was "produced using materials which have been . . . shipped or transported" in interstate commerce, as required by the statute, the prosecution relied solely on an inscription on the thumb drive stating, "Made in China."  We agree with the district court that copying pornography onto a thumb drive is "produc[ing]" pornography under the statute, and we reject Burdulis's challenge to the admission of the drive's inscription.  We also reject Burdulis's claim that our interpretation of the law puts it beyond Congress's authority to regulate interstate commerce.  After discussing these issues, along with Burdulis's objections to the warrant used to search the thumb drive, we affirm his conviction in all respects.

## I. Background

Burdulis became the subject of investigation by local police in Massachusetts when a note with his first name, email address, and telephone number was given to a thirteen-year-old boy at a golf course.  After learning of the boy's receipt of the note, and determining that the owner of the phone number, Burdulis, was a registered sex offender, a detective created an email address to

communicate with Burdulis posing as "Tye," the boy who received the note.

Burdulis sent approximately thirty emails to Tye during a span of four days in May 2009. In the emails, Burdulis asked for "naughty pics" of Tye, and sent Tye a naked picture of himself, with his penis exposed. Burdulis also offered to send Tye "pornos" and "internet pics."

In his emails, Burdulis suggested several times that he and Tye should meet in person, making the following statements (among others):

- "maybe sometime you would join me in a bubble bath?";

- "if we get together again maybe I could give you a present :)";

- "wish I could hug you too . . . wish we could get together but guess you got school in the morning";

- "Is there a way to see each other for real today?";

- "It would be neat if we could work it out that you come over sometime"; and,

- "I have the camera on my phone for now, but that's all I have unless you come over and I use my webcam."

After several days of emailing, the local police sought and received a warrant to search Burdulis's home.[1]  In seeking the warrant, the police claimed that the emails established probable cause to believe that Burdulis had committed two crimes under state law: enticement of a child under sixteen, Mass. Gen. Laws ch. 265, § 26C, and dissemination of matter harmful to minors, Mass. Gen. Laws ch. 272, § 28.  The warrant granted authorization to seize all digital devices in Burdulis's home, and to search them for any information linking Burdulis to the emails and for any "information regarding the creation and maintaining [of] pornographic material."

The police took several digital devices from Burdulis's home, including a thumb drive.  When an officer viewed a gallery of images on the thumb drive, he saw several images of child pornography.  Burdulis does not dispute on appeal that the thumb

---

[1]  The police received two subsequent warrants in this case, but the government relies only on the first warrant, issued on May 12, 2009, to justify its searches on this appeal.

drive contained child pornography or that it belonged to him.

Burdulis was prosecuted in federal court for possession of child pornography, found guilty by a jury, and sentenced to 108 months in prison. Before trial, the district court denied Burdulis's motion to suppress the evidence found in his home, ruling that the warrant was supported by probable cause.[2] The district court also rejected Burdulis's claim that the government's proof failed to satisfy the jurisdictional element of the child pornography statute, and that the statute, as applied to him, exceeded Congress's authority under the commerce clause. Burdulis appeals these rulings.

## II. The Constitutionality of the Search Warrant

Burdulis first argues that the warrant to search both his home and the devices inside it violated the Fourth Amendment because the government did not have probable cause to believe that he had committed any crime and because the warrant was too broad. In assessing the district court's denial of Burdulis's motion to suppress, we review the court's legal conclusions de novo while reviewing factual findings for clear error.[3] United States v. Wilder, 526 F.3d 1, 5 (1st Cir. 2008).

_____

[2] The court initially granted Burdulis's motion in part but later amended its order to reject the motion entirely.

[3] The government contends that Burdulis forfeited parts of his Fourth Amendment argument below. Because we find that Burdulis's challenges fail on their merits, we need not decide whether they were forfeited.

Burdulis's emails certainly supplied probable cause to believe that he had committed the state crime of enticement of a child under sixteen. As relevant here, a person commits the crime by "coax[ing] or invit[ing]" another person, believing that person to be under the age of sixteen, to enter a "dwelling . . . with the intent that he or another person will violate" specified laws, including the prohibition against unnatural and lascivious acts with a child under 16 and the prohibition on indecent assault and battery on a child under 14. Mass. Gen. Laws ch. 265, §§ 26C, 13B, ch 272, § 35A. In context, the emails we have described above could self-evidently be viewed as constituting enticement.

Similarly, the police had probable cause to believe that Burdulis committed the state crime of dissemination of matter harmful to minors when he sent Tye a naked picture showing his partially erect penis. Massachusetts law defines matter "harmful to minors" to include material that "(1) describes or represents nudity, sexual conduct or sexual excitement, so as to appeal predominantly to the prurient interest of minors; (2) is patently contrary to prevailing standards of adults in the county where the offense was committed as to material suitable for such minors; and (3) lacks serious literary, artistic, political or scientific value for minors." Mass. Gen. Laws ch. 272, § 31. The statute prohibits purposeful dissemination of material that the distributor knows is harmful to minors to someone the distributor believes to be a

-6-

minor.  Mass. Gen. Laws ch. 272, § 28.  The Massachusetts Supreme Judicial Court has held that an image displaying a man's genitals, even if not obscene, could be found by a jury to be matter harmful to minors depending on the surrounding circumstances.  See Commonwealth v. Kereakoglow, 456 Mass. 225, 228 & n.6 (2010).  That the picture here purported to be of the distributor himself, and was employed as a lure, certainly enhanced the reasonableness of deeming it harmful.[4]  See Florida v. Harris, 133 S. Ct. 1050, 1055 (2013) (explaining that the police have probable cause for a search where "the facts available to [them] would warrant a person of reasonable caution in the belief that . . . evidence of a crime is present" (internal quotation marks omitted)).

Burdulis also argues that, even if the police had probable cause for a limited search of his home, the warrant swept too broadly in allowing the police to look for "[a]ny computer data file containing information regarding the creation and maintaining [of] pornographic material."  To prevent "exploratory rummaging in a person's belongings," Coolidge v. New Hampshire, 403 U.S. 443, 467 (1971), a search must be "confined in scope to particularly

_____

[4]  In these respects, and in its availability for direct review by the factfinder, the photo was quite unlike the Playboy magazine at issue in Commonwealth v. Militello, 66 Mass. App. Ct. 325, 332-33 (2006) (holding that oral description of photos, which "left a good deal to the imagination," could not support a jury finding that the magazine was matter harmful to minors). Militello, in any event, is a lower state court decision pre-dating Kereakoglow.

-7-

described evidence relating to a specific crime for which there is demonstrated probable cause," Davis v. Gracey, 111 F.3d 1472, 1478 (10th Cir. 1997).  Here, Burdulis's own emails defeat his challenge to the warrant's breadth by showing that the police had probable cause to believe he possessed pornography in electronic form that he intended to send to Tye over the internet, justifying a search matched in scope to that suspicion.  See Mass. Gen. Laws 272, § 29 (prohibiting the possession of material harmful to minors with the intent to distribute to someone believed to be a minor).  After Tye mentioned watching videos that a friend stole from his grandfather, Burdulis asked if the videos were "pornos."  When Tye responded affirmatively, Burdulis wrote, "I like porno too at times -- what kinds do you like to watch and do you d/l from the internet too?"  In the same email, Burdulis said, "What would you like me to send to you? I will try to send if I can."  And in his next email, Burdulis asked if Tye wanted him to send "internet pics."  The emails were certainly enough to create a reasonable suspicion that Burdulis intended to send Tye pornography electronically, and the police could reasonably believe that the pornography would constitute material harmful to minors under the Massachusetts statute.[5]  Accordingly, the scope of the search fit the suspected crime, so we reject Burdulis's argument that the warrant was overly

_____

[5]  Not surprisingly, we reject Burdulis's argument that the police could not reasonably believe that he was referring to pornography when he used the word "pornos."

broad.

In assessing whether the police had probable cause to search for pornography, we acknowledge that, in a different context, we have cautioned that courts should generally not approve a warrant to search for child pornography based solely on a police officer's assertion that images he has seen but has not shown to the magistrate constitute such pornography. See United States v. Brunette, 256 F.3d 14, 18-19 (1st Cir. 2001). In cases in which the warrant request hinges on a judgment by an officer that particular pictures are pornographic, the officer must convey to the magistrate more than his mere opinion that the images constitute pornography. Here, though, the warrant was not based on any officer's opinion that certain pictures were pornographic. Instead, the officer submitted to the magistrate Burdulis's own statements that are reasonably read as indicating that he intended to send pornography to Tye. These statements, combined with the fact that Burdulis had already sent an image likely qualifying as matter harmful to minors (which the police did provide to the magistrate), created a reasonable inference that a search of Burdulis's digital devices would turn up evidence that he possessed pornography and thereby support a conclusion that he intended to send it to Tye. Consequently, we see no basis for reversing the district court's denial of Burdulis's motion to suppress.

### III. The Jurisdictional Element

Burdulis next raises a series of arguments related to the jurisdictional element of the statute under which he was convicted. The term "jurisdictional element" refers to a statutory provision that limits (or, more commonly, justifies) the reach of a federal statute by linking the offense to conduct that involves "at least some explicit connection with or effect on interstate commerce." United States v. Morales-de Jesús, 372 F.3d 6, 12 (1st Cir. 2004) (internal quotation marks omitted). Here, the federal prohibition on possession of child pornography applies very broadly to any visual depiction that:

> has been mailed, or has been shipped or transported using any means or facility of interstate or foreign commerce or in or affecting interstate or foreign commerce, or which was produced using materials which have been mailed or so shipped or transported, by any means including by computer.

18 U.S.C. § 2252(a)(4)(B).

In attempting to show that the jurisdictional element was satisfied in this case, the government offered evidence that Burdulis's thumb drive, which contained child pornography, was made in China. Based on this evidence, the government argued that the pornographic images were "produced using materials"--namely, the thumb drive--"shipped or transported . . . in . . . interstate or foreign commerce." We discuss below Burdulis's objection to the admissibility of the government's evidence, but we start by assessing his arguments regarding the meaning of the jurisdictional

-10-

element and its effect on the statute's constitutionality.  On these purely legal issues, which Burdulis raised below, we review the district court's decision de novo.

Burdulis contends that the word "produced" in the statute refers only to the initial creation of the pornography.  For example, according to Burdulis, the materials used in producing a pornographic video would include the camera used in capturing the video, but not a hard drive later used to download the video from the internet, nor a disk onto which the video was copied.  Burdulis's primary support for his argument is a dictionary entry defining "produce" as "bring into existence," among other definitions.  But this definition does not prove Burdulis's point, because to create a copy from an original is to bring something into existence: the copy.  For instance, someone who photocopies a newspaper article has brought into existence a new copy of the article.

The statute itself embraces this notion of production. It defines "producing" to include "publishing" and "manufacturing." 18 U.S.C. § 2256(3).  In ordinary usage, both words encompass the creation of new copies from an original.  For example, a publishing house is involved in the publication of a book when it prints copies of the book for sale, regardless of whether it participated in writing and editing the book or even in creating the first bound copy.  We also note that in describing production, the statute

-11-

specifically mentions computers, which are often (and perhaps primarily) used to view and store copies of previously created digital files.

Five of the six circuits that have addressed the issue have applied this understanding of production to find that the jurisdictional element is satisfied when someone copies a file onto a digital medium such as a thumb drive.[6] When a person loads an image onto a thumb drive from the internet or another source, that person has created a new copy of the image in the digital memory of the thumb drive. As the Ninth Circuit put it, "[w]hen the file containing the image is copied onto a disk, the original is left intact and a new copy of the image is created, so the process 'produces' an image." United States v. Guagliardo, 278 F.3d 868, 871 (9th Cir. 2002) (per curiam). Contrary to Burdulis's contention at oral argument, then, the thumb drive is not merely a "passive receptacle," such as a frame in which an existing photograph is placed. Rather, it is a tool that produces yet another copy of the photograph.

_____

[6] See United States v. Dickson, 632 F.3d 186, 189-90 (5th Cir. 2011); United States v. Caley, 355 F. App'x 760, 761 (4th Cir. 2009); United States v. Maxwell, 386 F.3d 1042, 1052 (11th Cir. 2004), vacated but later reinstated in relevant part, see 446 F.3d 1210, 1211 (11th Cir. 2006); United States v. Angle, 234 F.3d 326, 341 (7th Cir. 2000); United States v. Lacy, 119 F.3d 742, 750 (9th Cir. 1997). Even the Tenth Circuit, which reached a different conclusion, has more recently offered cause to question its earlier decision. See United States v. Schene, 543 F.3d 627, 636-39 (10th Cir. 2008).

-12-

Burdulis nevertheless maintains that applying the statute in this way would make it unconstitutional. He says that absent a stronger link to interstate commerce, his conduct sat outside Congress's power to regulate. Yet, we have already rejected a nearly identical challenge to a conviction based on the intrastate possession of a photo taken with a camera manufactured out of state. See United States v. Robinson, 137 F.3d 652, 656 (1st Cir. 1998). It would make no sense to then say that the use of a device manufactured abroad to create copies of pornographic material would nevertheless fall outside Congress's control. After all, it is the ease of copying with digital devices that now drives the exponential proliferation of child pornography as part of a broad interstate market. See Paroline v. United States, 134 S. Ct. 1710, 1717 (2014). Congress may act in response to this "substantial influence on . . . market conditions." Gonzales v. Raich, 545 U.S. 1, 19 (2005). See also National Fed'n of Indep. Bus. v. Sebelius, 132 S. Ct. 2566, 2586 (2012) (opinion of Roberts, C.J.) ("Congress's power . . . extends to activities that [have a substantial effect on interstate commerce] only when aggregated with similar activities of others"). Like our sister circuits that have addressed this issue,[7] we reject Burdulis's Commerce Clause argument.

---

[7] See, e.g., United States v. Bowers, 594 F.3d 522, 527-30 (6th Cir. 2010) (rejecting a challenge similar to Burdulis's, and collecting cases from other circuits doing the same).

## IV. The Admissibility of the Inscription

Finally, Burdulis argues that the district court erred by admitting as evidence the inscription on his thumb drive, "Made in China," over his hearsay objection. Without the inscription, Burdulis points out, the government would have had no evidence that the thumb drive traveled in interstate commerce and therefore no evidence that the jurisdictional element was satisfied. When presented with a preserved evidentiary objection, we review the district court's decision for abuse of discretion, reversing if we are "left with a definite and firm conviction that the court made a clear error of judgment." United States v. Trenkler, 61 F.3d 45, 57 (1st Cir. 1995) (internal quotation marks omitted). Where an evidentiary objection is not preserved, we review for plain error, requiring the appellant to show that the error, if any, was "clear or obvious," "affected his substantial rights," and "seriously impaired the fairness, integrity, or public reputation of judicial proceedings." United States v. Mardirosian, 602 F.3d 1, 11 (1st Cir. 2010).

Like the district court, we accept for purposes of analysis Burdulis's claim that the inscription was hearsay, a statement made outside of court used to prove the truth of the matter asserted.[8] Fed. R. Evid. 801(c). While the federal rules

---

[8] Three circuits have found that similar inscriptions are not statements falling within the hearsay rule. See United States v. Koch, 625 F.3d 470, 480 (8th Cir. 2010); United States v. Thody,

of evidence generally prohibit hearsay, they include several exceptions to that rule, including a "residual exception." Fed. R. Evid. 807. That exception allows the admission of hearsay if "the statement has equivalent circumstantial guarantees of trustworthiness [to hearsay statements falling under a specified hearsay exception]"; "it is more probative on the point for which it is offered than any other evidence that the proponent can obtain through reasonable efforts"; and, "admitting it will best serve the purposes of these rules and the interests of justice," along with a fourth requirement not at issue here. Fed. R. Evid. 807(a).

Burdulis objected below only on the first prong, arguing that the inscription lacked sufficient indicia of reliability. He now presses that claim on appeal, along with several new arguments that he did not present in the district court. On the reliability issue, we detect no abuse of discretion in the conclusion that the inscription had "circumstantial guarantees of trustworthiness" as required by the rule. The district court rightly considered the fact that inscriptions indicating foreign origin are regulated, see 19 U.S.C. § 1304, and federal law prohibits false or misleading designations of origin, see 15 U.S.C. § 1125(a). Moreover, under the federal rules of evidence trade inscriptions are self-authenticating, Fed. R. Evid. 902(7), meaning they "require no

978 F.2d 625, 630-31 (10th Cir. 1992); United States v. Alvarez, 972 F.2d 1000, 1004 (9th Cir. 1992).

-15-

extrinsic evidence of authenticity in order to be admitted," Fed. R. Evid. 902.  An authentic inscription, of the kind made regularly by manufacturers in accordance with federal law, bears significant similarity to other forms of evidence admissible under the enumerated hearsay exceptions.  See Fed. R. Evid. 803(6) (records of regularly conducted activity), (9) (certain information reported to a public office in accordance with a legal duty).  Common sense, too, suggests a low probability that someone would stamp "Made in China" on a device made in the United States and presumably marketed here.  Certainly the record here contains no reason to think otherwise.  As to the other prongs of Rule 807(a), Burdulis's new arguments are largely perfunctory and provide no cause to treat as plain error any doubt that the inscription was more probative than other evidence reasonably available to the government or that admission of the evidence served the interests of justice.

Burdulis also contends for the first time on appeal that the government failed to give adequate notice before trial as required by Rule 807(b).  That paragraph requires notice of "intent to offer the statement and its particulars, including the declarant's name and address," in order to ensure that the opposing party has "a fair opportunity to meet it."  Fed. R. Evid. 807(b). Here, the government notified the district court and the defendant before trial that it sought to establish an interstate nexus by "introduc[ing] into evidence the thumb drive containing images and

-16-

videos of child pornography . . . [which] bears a manufacturer's label that . . . reads, 'Made in China.'"

Burdulis faults the notice for failing to inform him that the government would use Rule 807 as a basis for admission, but the rule does not require such procedural information to be part of the notice. Burdulis also complains that the government never provided "contact information for anyone who could be questioned regarding the veracity of the imprint." We agree with Burdulis that the government fell short under the rule by failing to provide notice to Burdulis that the drive bore the name and mark of SanDisk, a company that manufactures digital devices. The government also should have provided an address for SanDisk.

Nevertheless, Burdulis has failed to show that the admission of the evidence affected his substantial rights and impaired the integrity of the judicial process, as required by our plain error standard. Mardirosian, 602 F.3d at 11. Notably, the drive was taken from Burdulis's own home, and Burdulis has never claimed that he was unaware that the drive bore SanDisk's name. As for the address, the government correctly points out that Sandisk's address could have been "easily . . . obtained through a simple online search." And Burdulis never made any request of the government for information regarding the manufacturer. In these circumstances, where Burdulis had or could easily obtain all of the information he needed to meet the government's evidence, and never

requested additional information, we find no plain error in admission of the inscription.  See <u>United States</u> v. <u>Doe</u>, 860 F.2d 488, 491-92 (1st Cir. 1988) (rejecting a challenge to failure to provide notice under the residual hearsay exception where the defendants did "not appear to have been prejudiced" by the omission); <u>United States</u> v. <u>Brantley</u>, 68 F.3d 1283, 1288-89 (11th Cir. 1995) (finding no prejudice where the government relied on an inscription on the defendant's firearm, deeming it "a clear indication of interstate commerce which must have been known by him all along").

## V. Conclusion

For the reasons stated above, we <u>affirm</u> Burdulis's conviction.

<u>So ordered</u>.