# United States Court of Appeals
## For the First Circuit

No. 19-1953

UNITED STATES OF AMERICA,

Appellee,

v.

JOHN DOE,

Defendant, Appellant.

APPEAL FROM THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MASSACHUSETTS

[Hon. Douglas P. Woodlock, U.S. District Judge]

Before

Lynch, Thompson, and Barron,
Circuit Judges.

Derege B. Demissie, with whom Demissie & Church and Antonio Espinoza were on brief, for appellant.
Christine J. Wichers, Assistant United States Attorney, with whom Nathaniel R. Mendell, Acting United States Attorney, was on brief, for appellee.

January 20, 2022

BARRON, **Circuit Judge**.  In September 2019, the appellant in this case was convicted in the United States District Court for the District of Massachusetts on six counts that covered a range of federal crimes.  Each of the counts stemmed from his use of the social security number assigned to a José Manuel Rodriguez when the appellant allegedly was not in fact that person.  The appellant now challenges each of the resulting convictions in this appeal.

Notably, although the appellant continues to maintain that his legal name is José Manuel Rodriguez and that he has gone by no other name, he is referred to in the charges in the indictment that underlie the convictions at issue in this appeal as "John Doe."  Thus, given the fact of those convictions, we similarly refer to the appellant as "John Doe" in considering his challenges to them on the two grounds that he argues to us: that the District Court improperly admitted into evidence a form that he submitted to the Social Security Administration (SSA) in 2014, and that the District Court wrongly permitted a former immigration officer to testify at Doe's federal criminal trial to the answers that Doe gave in response to questioning at Miami International Airport.  Because we see no merit in either ground for overturning any of the convictions, we affirm each of them.

**I.**

In July 2018, a grand jury in the District of Massachusetts indicted Doe on six counts: one count of using a

fraudulently obtained passport in violation of 18 U.S.C. § 1542 (Count One), two counts of misuse of a social security number in violation of 42 U.S.C. § 408(a)(7)(B) (Counts Two and Three), one count of theft of public funds in violation of 18 U.S.C. § 641 (Count Four), and two counts of aggravated identity theft in violation of 18 U.S.C. § 1028A (Counts Five and Six). The following facts that pertain to these charges -- each of which concerns Doe's alleged use of social security number (SSN) xxx-xx-9645 -- are not in dispute on appeal.

In 1994, Doe visited an SSA office in Boston, Massachusetts in response to a letter that he had received from the U.S. Internal Revenue Service. That letter had informed him that the name associated with the social security number that he had been using until that date, SSN xxx-xx-3455, did not match the name that he went by at the time, which was José Manuel Rodriguez. Rather, SSA records showed that SSN xxx-xx-3455 was, in fact, assigned to an individual whose initials are R.R. and who was born in 1955.

At the SSA office, Doe was asked for his name, birthdate, birthplace, and parents' names so that the SSA official assisting him could determine whether a person with that biographical information had been assigned a social security number and, if so, what that number was. Doe represented that his name was José Manuel Rodriguez and that he was born on November 14, 1949 in Rio

- 3 -

Piedras, Puerto Rico to José Rodriguez and Felicita Nieves. The information that Doe gave regarding José Manuel Rodriguez matched the information that the SSA had in its system about that person, and Doe was subsequently issued a social security card bearing a different social security number from the one that the IRS had flagged. That new card's social security number was xxx-xx-9645.

More than a decade later, in 2006, Doe procured a U.S. passport with SSN xxx-xx-9645, and four years after that, on February 27, 2010, he used that passport to travel from the Dominican Republic to Boston. The latter event forms the factual predicate for Count One of the indictment, which charges Doe with the use of a fraudulently obtained passport.

In 2012, José Manuel Rodriguez died. In consequence, when Doe, still representing himself to be José Manuel Rodriguez, applied the following year for state unemployment benefits in Massachusetts, the Massachusetts Department of Unemployment Assistance rejected his application because it determined that Doe could not satisfactorily prove that he was the person that he claimed to be. Doe appealed the denial of his claim at a hearing held on November 12, 2013 and represented at the hearing that his name was José Manuel Rodriguez and that SSN xxx-xx-9645 was his social security number. These events form the factual predicate for Counts Two and Five of the indictment, which concern,

respectively, misuse of a social security number and aggravated identity theft.

The next events of relevance to this appeal occurred the following year, when Doe applied for a housing voucher from the Boston Housing Authority, again using the SSN xxx-xx-9645. Doe's application was granted, and he was given a voucher that was funded by the U.S. Department of Housing and Urban Development. These events form the factual basis for Count Four of the indictment, which concerns theft of public funds.

The final events that gave rise to the convictions of relevance to this appeal occurred, on April 22, 2014. On that day, Doe once again visited the SSA office in Boston to report issues that he was having in using SSN xxx-xx-9645. During that visit, Doe provided information about those problems to an SSA official, who relied on the information that Doe supplied to fill out a 795-SSA form.

Doe reported to the official, and the 795-SSA form in turn recounted, the events in 1994 when he first acquired SSN xxx-xx-9645 after having represented to the SSA that his name was José Manuel Rodriguez and that he was born in 1949 in Puerto Rico. Doe signed the 795-SSA form setting forth the information just described as being a true statement on penalty of perjury. Doe's representation on the 795-SSA form that SSN xxx-xx-9645 was his social security number gave rise to Count Three of the indictment,

- 5 -

which charged him with misuse of a social security number, and Count Six of the indictment, which charged him with aggravated identity theft.

Following Doe's indictment on the six counts pertaining to his use of SSN xxx-xx-9645, the criminal case against him proceeded to a jury trial in the District of Massachusetts in June 2019. Doe's defense during the five-day trial was that he honestly believed that he was properly assigned SSN xxx-xx-9645 in 1994 and thus lacked the requisite mens rea necessary for the jury to find him guilty beyond a reasonable doubt on any of the counts. The jury found Doe guilty on all six counts. The District Court sentenced Doe to thirty-six months of imprisonment with three years of supervised release and $16,762 in restitution. Doe then timely filed this appeal.

## II.

Doe first contends that his convictions cannot stand because the District Court erred by admitting the 795-SSA form that the SSA officer prepared during Doe's visit to the SSA office in Boston in 2014. He contends that the entry of the form caused him prejudice both because two of the convictions rest on counts that are directly predicated on representations made by Doe that were included on that form and because the form more generally contained information that suggested that he was not José Manuel Rodriguez. In that latter regard, Doe points to the fact that the

- 6 -

form contained a statement by him that he speaks with a Dominican accent, arguably calling into question his assertion that he was the José Manuel Rodriguez who was born in Rio Piedras, Puerto Rico as he had asserted was the case.

The District Court admitted this form pursuant to Federal Rule of Evidence (FRE) 803(6), which permits a court to admit a document that would otherwise be inadmissible hearsay if the following requirements are satisfied: (1) "the record was made at or near the time by -- or from information transmitted by -- someone with knowledge;" (2) "the record was kept in the course of a regularly conducted activity of a business, organization, occupation, or calling;" (3) "making the record was a regular practice of that activity;" (4) "all these conditions are shown by the testimony of the custodian or another qualified witness, or by . . . certification;" and (5) neither "the source of the information [n]or the method or circumstance of preparation indicate a lack of trustworthiness." Fed. R. Evid. 803(6). Doe contends that the form was improperly admitted because it "was not made in the regular course of business as the statements were taken . . . with an eye towards litigation;" "[t]he source of the information in the 795-SSA form is an outsider to the business;" and "[t]he methods and circumstances of preparation of the SSA-795 form indicate a lack of trustworthiness."

Doe did not raise to the District Court either of the latter two grounds for objecting to the admission of the form below, and, as a consequence, those claims are subject to plain error review. See United States v. Rosado-Pérez, 605 F.3d 48, 54 (1st Cir. 2010). He makes no argument to us as to either of those grounds that the District Court committed plain error in admitting the form. Thus, any argument to that effect is waived, see United States v. Pabon, 819 F.3d 26, 33 (1st Cir. 2016), and so we confine our analysis to a consideration of the first ground that he sets forth regarding the admissibility of the form, which he did raise below.

In support of the contention that the District Court erred in rejecting his objection to the admission of the 795-SSA form, in which he contended that the record compels the conclusion that form had been prepared in anticipation of litigation and so not in the regular course of business, see Palmer v. Hoffman, 318 U.S. 109, 111-12 (1943) (finding that an accident report created in anticipation of litigation was not made "in the regular course of business" and thus was properly excluded from the record); see also United States v. Goodchild, 25 F.3d 55, 62 (1994) (explaining that records "prepared with an eye to litigation" are not admissible as business records), Doe points to the testimony of Jeisa Rincon. She is the SSA employee in the Boston office of that agency who helped Doe during his visit there in 2014 fill out

the 795-SSA form by asking him questions, writing down a translated version of his response, and reading those written responses back to him in Spanish to confirm she had recorded his answers correctly.

Doe points specifically to Rincon's testimony that after he arrived seeking assistance for the problems that he was having using the social security number in question, her supervisor asked her to help Doe fill out the form because she was bilingual and told her to "grab as much detail as possible" in the course of that interaction, and that she answered in the negative when she was asked if the events that transpired concerning the filling out of the form were "typical."

Our review of the District Court's ruling in admitting the form and rejecting Doe's characterization of it is for abuse of discretion. See United States v. Casanova, 886 F.3d 55, 63 (1st Cir. 2018). We see none.

Although Rincon did testify that her interaction with Doe "was not a typical event," the District Court explained that the 795-SSA form is "used for people who make allegations and, consequently, not everybody makes an allegation who comes in[to] [the SSA office]." In addition, the District Court also found that while Rincon's supervisor requested that she "grab as much detail" as she could from Doe, Rincon was unaware of any ongoing investigation of Doe at the time she filled out the form. For

those reasons, the District Court determined that Rincon's statement was merely a statement that reflected the reality that the filling out of that form even in the ordinary course -- and hence even when not filled out with an eye toward litigation -- is itself not necessarily a "typical" event.

Given the reasonableness of that understanding of the import of the portion of Rincon's testimony on which Doe relies, the fact that there is no evidence in the record that shows that Rincon knew of any ongoing investigation into Doe at the time she spoke with him, and the fact that she did not testify that she asked Doe any questions that she would not have absent her boss's instruction to "grab as much detail as possible," we cannot say on this record that "we are 'left with a definite and firm conviction that the [District Court] made a clear error of judgment'" in so understanding the import of Rincon's testimony. United States v. Burdulis, 753 F.3d 255, 263 (1st Cir. 2014) (quoting United States v. Trenkler, 61 F.3d 45, 57 (1st Cir. 1995)). We thus see no basis for concluding that the District Court's decision to reject Doe's objection to the admission of the form under FRE 803(6) was an abuse of discretion.[1]

---

[1] We also note that Doe seems to advance a second, related argument that 795-SSA forms, categorically, are created in anticipation of litigation because they are "only used when an individual seeks to make an allegation pertaining to their SSN to the Social Security Administration," and thus they are "more like [the] accident report [from Palmer] than a business record." As

Doe's remaining ground for challenging his convictions takes aim at the District Court's denial of his motion to suppress the testimony of a former immigration official, Jose DeChoudens. That official interviewed Doe at Miami International Airport in 1985 when Doe sought to reenter the United States after visiting the Dominican Republic.

DeChoudens testified at trial concerning certain answers that Doe gave when questioned, including as to his recollection of Doe having given an answer to a question as to where he attended school in Puerto Rico that was implausible and as to Doe having spoken at that time with a Dominican accent. Doe moved to suppress the testimony on the ground that DeChoudens's questioning of him at the airport was a custodial interrogation for which he was not given the warnings required by <u>Miranda</u> v. <u>Arizona</u>, 384 U.S. 436 (1966). The District Court denied the motion, however, on the ground that the questioning was not custodial in nature.

Doe contends on appeal that the District Court erred in so concluding. But, even if we assume that Doe is right on that

---

Doe did not advance this argument to the District Court, our review is for plain error. <u>See</u> <u>Rosado-Pérez</u>, 605 F.3d at 54. Because Doe has not explained how this argument challenging the District Court's admission of the 795-SSA form survives plain-error review, any such contention is waived. <u>See</u> <u>United States</u> v. <u>Zannino</u>, 895 F.2d 1, 17 (1st Cir. 1990).

score, we conclude, reviewing de novo, see United States v. Pérez-Vásquez, 6 F.4th 180, 194 (1st Cir. 2021), that any error was harmless beyond a reasonable doubt, see United States v. Carl, 593 F.3d 115, 119 n.3 (1st Cir. 2010) ("Statements induced in violation of Miranda's safeguards are appropriate for analysis under the harmless beyond a reasonable doubt test." (quoting United States v. Batista-Polanco, 927 F.2d 14, 21 (1st Cir. 1991))); see also United States v. Verdugo, 617 F.3d 565, 574 (1st Cir. 2010) (declining to reach the merits of a claim asserting a violation of Miranda because "the claimed error was harmless beyond a reasonable doubt").

To convict Doe of the offenses that he was indicted on, the government had to prove beyond a reasonable doubt that Doe knew that he was not assigned SSN xxx-xx-9645. The government's case thus depended on its ability to show beyond a reasonable doubt that the biographical information regarding José Manuel Rodriguez that Doe purported was his own was, in fact, not and that he knew it was not each time that he used that number in the manner that supplies the predicate for each of the charges on which the convictions that he challenges are based. But, that being so, we see no reason to conclude that DeChoudens's testimony "add[ed] very much [in the way of proof] to the mix." See United States v. Piper, 298 F.3d 47, 58 (1st Cir. 2002).

- 12 -

Wholly apart from that testimony, the evidence the government presented to show that Doe was not José Manuel Rodriguez and knew that he was not was overwhelming. See Clark v. Moran, 942 F.2d 24, 27 (1st Cir. 1991) ("[C]ourts have found [an] error to be harmless when the [remaining] evidence . . . provided 'overwhelming evidence' of the defendant's guilt." (citation omitted)). For example, the government presented testimony from Angel Rodriguez, the brother of José Manuel Rodriguez -- the purported true assignee of SSN xxx-xx-9645 -- that his brother's biographical information matched the information the SSA had on file for the social security number that Doe was using. Specifically, Angel testified that his brother was born in Puerto Rico in 1949 to their parents, José Manuel Rodriguez and Felicita Nieves, and that his brother had died in 2012. To substantiate that testimony, the government introduced into evidence his brother's application for a social security number in 1964, his original social security card, and his death certificate.

To be sure, Doe's sole witness, his daughter, did testify that Doe's birthdate was November 15, 1949 -- a birthdate that matched the SSA's records relating to SSN xxx-xx-9645. But, on cross examination, she admitted that she had applied for a U.S. passport roughly two decades earlier and had stated in doing so at that time that her father's birthdate was May 20, 1950. Nor did she explain the discrepancy between her representations about her

father's birthdate in her testimony and her contradictory representation about it when she had applied for the passport.

Against this evidentiary backdrop, it is hard to see how DeChoudens's testimony regarding his decades-old recollection of the implausible nature of the answers that Doe gave in response to questions about the school that he attended in Puerto Rico could be thought to have had any material impact either on a juror's assessment that Doe's asserted biographical information was not what he had represented it to be or whether Doe knew that it was not. Nor does Doe offer any explanation of how it could have been, notwithstanding the problems he does not dispute existed with respect to the testimony of the sole witness he put forward and the evident strength of testimony (supported by documents) of Angel Rodriguez. Moreover, the only documentary evidence Doe introduced consisted of employment records that show only that he was using the name José Manuel Rodriguez and the social security number assigned to that person, neither of which is a fact in dispute.

The same is true of DeChoudens's testimony that Doe spoke in 1985 with a Dominican accent, especially because the 795-SSA form -- which, as we have explained, Doe has not shown was improperly admitted into evidence -- itself contained an admission by Doe that he spoke with a Dominican accent in 2014, and that Rincon testified at trial that she recalled Doe at that time spoke "more like a Dominican . . . than a Puerto Rican" and that she

"could tell he was acting as a Puerto Rican" because "[h]e was using a lot of expressions that are very stereotypical, and . . . just didn't come out right."  See Ahern v. Scholz, 85 F.3d 774, 786 (1st Cir. 1996) (noting that an error does not "rise[] to the level of harmful error if . . . 'the evidence omitted was cumulative as to other admitted evidence'" (quoting Doty v. Sewall, 908 F.2d 1053, 1057 (1st Cir. 1990))).  We thus reject Doe's Miranda-based challenge to his convictions on harmless error grounds, without thereby suggesting that the interview DeChoudens conducted constituted a custodial interrogation.

## IV.

For the aforementioned reasons, we **affirm**.