# United States Court of Appeals
## For the First Circuit

No. 21-1120

UNITED STATES,

Appellee,

v.

HANFORD CHIU,

Defendant, Appellant.

APPEAL FROM THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MASSACHUSETTS

[Hon. Denise J. Casper, U.S. District Judge]

Before

Lynch, Selya, and Kayatta,
Circuit Judges.

Paul J. Garrity for appellant.
Karen L. Eisenstadt, Assistant United States Attorney, with
whom Rachel S. Rollins, United States Attorney, was on brief, for
appellee.

June 2, 2022

**KAYATTA, Circuit Judge.** Hanford Chiu appeals from his jury convictions for receipt and possession of child pornography. He challenges both the denial of his pre-trial motion to suppress evidence obtained pursuant to an allegedly defective search warrant and the district court's ruling that barred certain text-message evidence from Chiu's trial. Upon review, we find that the warrant affidavit provided an adequate basis to support probable cause and that the district court did not abuse its discretion in excluding the text messages as inadmissible hearsay. We therefore affirm Chiu's convictions. Our reasoning follows.

## I.

The investigation culminating with Chiu's arrest began with the search and arrest of another man, Warren Anderson. Anderson came to the attention of law enforcement by way of the messaging app Kik, which identified and reported suspected child pornography sent from an IP address that law enforcement tracked to Anderson. Special Agent (SA) Joseph Iannaccone of the Department of Homeland Security (DHS) applied for a search warrant with an affidavit ("the First Affidavit") that included a description of the image transmitted from Kik. When law enforcement approached Anderson to execute the search warrant on August 21, 2018, he provided them with extensive information about his interest in underage pornography, which included "depictions of boys as young as eight years old."

During his initial interviews on August 21, Anderson informed law enforcement that he had met an individual online named Hanford Chiu, who shared his interest in child pornography. The following day, SA Iannaccone, relying primarily on details from Anderson's initial interviews, prepared and filed a second search warrant affidavit ("the Second Affidavit") in support of a request for a warrant to search Chiu's residence, specifically the bedroom he used within a multifamily house.

According to the Second Affidavit, beginning around February of 2018, Anderson and Chiu met weekly at either man's residence to view child pornography. Anderson provided details about the layout of Chiu's residence and Chiu's custom-built PC, which the two used to view child pornography as recently as two days before the interview. Anderson told DHS that Chiu's computer included an extensive collection of downloaded child pornography. When agents asked Anderson to define "child pornography," he "indicated that it would involve children under 18." Anderson discussed a specific website, known to law enforcement to be "dedicated to the exchange of child pornography," which the two accessed via the anonymous internet browser Tor. He noted that Chiu was an attorney -- a fact which law enforcement later verified -- and that Chiu was cautious about his viewing of child pornography, rarely communicating with others on the dark-web sites he visited. Anderson also described some of the videos the

two viewed in their most recent session, "which included depictions of boys as young as 10 years old involved in sexual conduct." Unlike the First Affidavit, however, the Second Affidavit did not discuss any particular piece of contraband that law enforcement had viewed, and SA Iannaccone did not attach any such images.

The magistrate judge authorized the second warrant on August 22, and agents executed the search of Chiu's bedroom the same day. They found in his bedroom a custom-built computer tower with three hard drives, on which agents identified over a thousand images of child pornography in their preliminary on-scene review. Chiu was arrested that day. Later forensic analysis identified the Tor browser installed on multiple drives on Chiu's computer, with bookmarks to known child-pornography sites, as well as over 23,000 downloaded child-pornography files. A grand jury then indicted Chiu on charges of: (I) receiving child pornography, in violation of 18 U.S.C. § 2252A(a)(2)(A) and (b)(1); and (II) possessing child pornography, in violation of sections 2252A(a)(5)(B) and (b)(2).

Before trial, Chiu moved to suppress the evidence obtained from the search under the theory that the warrant and the supporting Second Affidavit failed to describe sufficiently the basis for probable cause. Specifically, he claimed that the Second Affidavit did not attach any pornographic images to be found and lacked the necessary alternative: descriptions of the illicit

images and videos to be found. The district court denied the motion, and Chiu proceeded to trial.

Chiu's defense at trial was that someone else had downloaded all the contraband to his computer. In support of this theory, he testified without objection that he had provided Anderson -- with whom he had been in a relationship for five years -- with several of his passwords and that he would occasionally bring his computer to Anderson's house for gaming and technical repairs. For further support, Chiu sought to introduce certain text messages between him and Anderson that, according to his counsel, showed that "the computer had crashed, [that] it was brought to Mr. Anderson to be repaired, and that Mr. Anderson requested various e-mail passwords from Mr. Chiu." The district court excluded the messages as hearsay.

Among the evidence in favor of the government, Chiu acknowledged on cross-examination that, on two different occasions within a week of his arrest, someone had accessed child pornography on his computer within minutes of accessing legal work files. Chiu recognized the legal work files and acknowledged having probably been the one to open them, but denied accessing the child pornography -- without providing any explanation for the nearly contemporaneous access.

After two days of trial, the jury convicted Chiu on both counts. The district court sentenced him to 110 months'

imprisonment and five years' supervised release.  Chiu timely appealed.

## II.

Chiu raises two claims of error in this appeal.  First, he contends that the district court erred in denying his motion to suppress because the Second Affidavit failed to attach or sufficiently describe the pornographic images to be found.  He then argues that the court erroneously excluded from trial his proposed text-message evidence that purportedly showed that Chiu had shared certain passwords with Anderson and had brought his PC to Anderson's home.  We take up these arguments in turn.

## A.

"In assessing the district court's denial of [a] motion to suppress, we review the court's legal conclusions de novo while reviewing factual findings for clear error."  United States v. Burdulis, 753 F.3d 255, 259 (1st Cir. 2014).  The ultimate determination of probable cause is a legal conclusion that we typically review de novo.  United States v. O'Neal, 17 F.4th 236, 243 (1st Cir. 2021). With that said, when reviewing affidavits supporting search warrants, "we give significant deference to the magistrate judge's initial evaluation, reversing only if we see no 'substantial basis' for concluding that probable cause existed."  United States v. Mendoza-Maisonet, 962 F.3d 1, 16 (1st Cir. 2020) (quoting United States v. Ribeiro, 397 F.3d 43, 48 (1st Cir. 2005)); see also United

States v. Cordero-Rosario, 786 F.3d 64, 69 (1st Cir. 2015) (same, in reviewing a child-pornography prosecution).  The judicial task in a probable-cause determination "is simply to make a practical, common-sense decision whether, given all the circumstances set forth in the affidavit . . . , there is a fair probability that contraband or evidence of a crime will be found in a particular place."  Illinois v. Gates, 462 U.S. 213, 238 (1983); see also United States v. Syphers, 426 F.3d 461, 464 (1st Cir. 2005) (observing, in reviewing a child-pornography prosecution, that "hypertechnical readings" of warrants and affidavits "should be avoided" (quoting United States v. Baldyga, 233 F.3d 674, 683 (1st Cir. 2000))).

We start with the crime for which evidence was sought. The Second Affidavit explained that SA Iannaccone believed he would find in Chiu's bedroom evidence of a violation of 18 U.S.C. § 2252A, which criminalizes the receipt and possession of "child pornography."  That term is then defined in section 2256 to include "any visual depiction" "of a minor engaging in sexually explicit conduct."  18 U.S.C. § 2256(8).  The statute further defines "sexually explicit conduct" to include: "sexual intercourse," "bestiality," "masturbation," "sadistic or masochistic abuse," and "lascivious exhibition of," inter alia, "genitals."  Id. § 2256(2)(A)(i)-(iv).

- 7 -

Chiu's argument against the sufficiency of the affidavit supporting the warrant to search his bedroom relies on our holding in United States v. Brunette, 256 F.3d 14 (1st Cir. 2001). We held there that an affidavit based on a law enforcement officer's personal review of pornographic images that had been flagged by an internet service provider did not support probable cause where the officer did not attach or describe the images and the affidavit "did not specify with any detail the basis for believing that those images were pornographic." Brunette, 256 F.3d at 15, 17. Instead, the affidavit merely included the officer's assertion that the images depicted a "prepubescent boy lasciviously displaying his genitals," id. at 17, language which tracks nearly verbatim one prong of the statutory definition of "sexually explicit conduct," see 18 U.S.C. § 2256(2)(A)(V). But because the identification of specific images as child pornography will often be, at least in part, a subjective exercise, "the determination should be made by a judge, not an agent." Brunette, 256 F.3d at 18. We thus found error there in "issu[ing] the warrant absent an independent review of the images, or at least some assessment based on a reasonably specific description." Id. at 19. Put another way, Brunette held that "[i]n cases in which the warrant request hinges on a judgment by an officer that particular pictures are pornographic, the officer must convey to the magistrate more than his mere opinion that the images constitute pornography." Burdulis, 753 F.3d at 261.

According to Chiu, the Second Affidavit was likewise insufficient because it did not attach or describe any specific pictures that law enforcement expected to find in Chiu's bedroom -- in contrast to the approach taken with the First Affidavit, which did describe the specific image flagged by Kik. Chiu contends that the Second Affidavit simply substituted an officer's opinion that particular images were pornographic with the same opinion held by another third party: the defendant's criminal associate Anderson. To be sure, the Second Affidavit included numerous indications that Anderson considered the material he viewed with Chiu to be "child pornography." And the most detailed description of the subject matter viewed was Anderson's statement that the two men had recently watched videos "includ[ing] depictions of boys as young as 10 years old involved in sexual conduct." This language does closely resemble some of the language defining "child pornography," which includes "visual depiction[s] . . . of a minor engaging in sexually explicit conduct." See 18 U.S.C. § 2256(8)(B).

But we need not consider whether Anderson's description of the most recently watched videos alone would suffice because the affidavit does not stop there. The totality of the circumstances described by the Second Affidavit included much "more than . . . mere opinion" that particular images were pornographic. Burdulis, 753 F.3d at 261. The affidavit also

detailed Anderson's recounting of his and Chiu's joint activity: that he met Chiu online and later learned they shared an interest in child pornography; that Chiu showed Anderson how to use the dark-web browser Tor to access a specific website known for its use in viewing and downloading child pornography; that Chiu "was very careful about his online activities as they related to child pornography," such that he would only download images posted by others, without communicating with the posters; and that Chiu maintained a personal collection of this downloaded material amounting to some eighty gigabytes stored on the "custom-built desktop computer" in Chiu's bedroom.

In Brunette, we observed that including similar contextual and investigatory details in an affidavit may have put the government on firmer probable-cause footing than the mere anodyne parroting of statutory language. See 256 F.3d at 18-19. We distinguished the skeletal affidavit in Brunette from one in another child-pornography case, in which the Ninth Circuit had upheld a warrant notwithstanding its failure to include or describe any particular images. See United States v. Smith, 795 F.2d 841, 847-48 (9th Cir. 1986). The Smith affidavit, unlike the one in Brunette, "was bolstered by a much stronger investigation prior to applying for the warrant, including interviews with the suspect, some of the victims, and a pediatrician who confirmed that the

girls pictured were under eighteen" -- all of which provided "other indicia of probable cause." Brunette, 256 F.3d at 19.

The Second Affidavit is much closer to the one in Smith. It detailed multiple interviews with an associate in the criminal activity and described particulars of how the search target came to acquire, store, and view the contraband -- including Chiu's efforts to evade detection and his history of accessing a website well-known for its use in obtaining child pornography. See also Syphers, 426 F.3d at 466 (recounting the details of a child-pornography investigation from an affidavit that "may" have established probable cause, which included interviews with victims and evidence that the defendant had frequented a specialized website for child-pornography enthusiasts).

In sum, the inquiry here trains on whether the affidavit provided the magistrate judge with a "common-sense" basis for finding a fair probability that the target location would contain evidence of the possession of child pornography. In Brunette, we answered "no" because the affidavit, in effect, called for the magistrate judge to defer to the officer's evaluation without any basis for assessing that evaluation. Here, the affidavit provided a bit more detail concerning the images ("depict[ing] boys as young as ten years old involved in sexual conduct"), and the affidavit's chronology of events provided a basis for the magistrate judge to give weight to Anderson's description of what Chiu was doing. We

- 11 -

therefore cannot say that, "given all the circumstances set forth in" the affidavit, it provided "no substantial basis" for probable cause to believe that evidence of child-pornography offenses would be found on Chiu's computer. See Cordero-Rosario, 786 F.3d at 69 (cleaned up). We thus find no error in the district court's denial of Chiu's motion to suppress.

**B.**

We turn next to Chiu's argument that the district court improperly barred evidence of certain statements, in the form of text messages, from his trial. Before trial, Chiu sought a ruling that text messages exchanged between Chiu and Anderson in 2015 would be admissible. According to Chiu's counsel, the messages showed that Chiu had brought his computer tower to Anderson's house in November of 2015 to be repaired and that Chiu shared various passwords with Anderson. While Chiu contended that he was offering the messages for a non-hearsay purpose -- that is, not for the truth of their content -- the court found that the messages were "being offered for the truth of [the] movement of the computer between the two places," thus rendering the messages hearsay without any apparent exception available. After the defense rested at trial, the court confirmed that counsel had sufficiently preserved the objection to its pretrial ruling.

When a defendant preserves a claim that the district court improperly excluded evidence, we review that claim for abuse

- 12 -

of discretion. United States v. Sabean, 885 F.3d 27, 38-39 (1st Cir. 2018). The government, however, argues for the more stringent plain-error standard because Chiu never argued below the specific theory now raised for overcoming the rule against hearsay, only that the statements were not being offered for their truth. However, we need not wade into that dispute because Chiu's claim fails under even his preferred abuse-of-discretion standard.

On appeal, Chiu argues that the messages ought to have been admitted as prior consistent statements. Under Federal Rule of Evidence 801(d)(1), a witness's prior statement is excluded from the rule against hearsay -- and thus may be admissible -- "when (1) the declarant testifies at trial and is subject to cross-examination; (2) the prior statement is consistent with the declarant's trial testimony; and (3) the prior statement is offered 'to rebut an express or implied charge against the declarant of recent fabrication or improper influence or motive.'" United States v. Jahagirdar, 466 F.3d 149, 155 (1st Cir. 2006) (emphasis omitted) (quoting Fed. R. Evid. 801(d)(1)(B)).[1]

Here, Chiu was the declarant of the statements he sought to introduce, and he did testify at trial, thus satisfying the

_____

[1] Chiu does not make any argument that the text messages ought to have been admissible under the most recent addition to Rule 801(d), for prior consistent statements that are used "to rehabilitate the declarant's credibility as a witness when attacked on another ground," Fed. R. Evid. 801(d)(1)(B)(ii), so we need not discuss that alternative basis.

- 13 -

first prong of our inquiry.[2]  On the "consistency" prong, Chiu argues that the text messages are consistent with his testimony that he gave Anderson some passwords and occasionally brought his computer to Anderson for gaming or repairs.  The government contests only the degree of consistency, but not that general premise.

The disagreement turns instead on the "fabrication" prong.  For this inquiry, we consider the degree of fit between the putative prior consistent statement and the charge of fabrication that it is offered to rebut.  See United States v. Wilkerson, 411 F.3d 1, 5 (1st Cir. 2005) ("[P]rior consistent statements must at least have 'some rebutting force beyond the mere fact that the witness has repeated on a prior occasion a statement consistent with his trial testimony.'" (quoting United States v. Simonelli, 237 F.3d 19, 27 (1st Cir. 2001))); Simonelli, 237 F.3d at 28 ("There is no rule admitting all prior consistent statements simply to bolster the credibility of a witness who has been impeached by particulars.").

To assess that fit for the statements offered here, we therefore ask:  Did the government make an express or implied charge that Chiu recently fabricated the claim that Anderson had

_____

[2]  To be sure, Anderson authored some of the messages in the larger set of text exchanges that Chiu initially sought to introduce.  Chiu's argument on appeal, however, focuses on the text messages that he sent to Anderson.

- 14 -

occasionally possessed Chiu's computer and passwords? The record shows that the government certainly challenged Chiu's credibility broadly, as well as his claim that someone else had downloaded the images to his computer without his knowledge. But the government never bothered to contest the predicate yet separate claim that Anderson could occasionally access the computer and passwords.

Chiu contends that the government's challenge to his alternate-downloader theory necessarily implied that Chiu fabricated the specific claim that Anderson had occasional access. But clearly it did not: Chiu could certainly do the downloading himself whether or not Anderson was able to do so. And the government's distinction between these claims makes sense in light of its theory at trial. In proving that Chiu possessed the material, the government did not rely on his exclusive ability to access his computer. Rather, it pointed to evidence that someone had actually accessed the pornographic files nearly contemporaneously with actual access of Chiu's work files.

More expansively, Chiu argues that the government's broader attacks on his credibility "strongly implied" that Chiu fabricated "the entirety of [his] testimony," and thus, Chiu should be able to introduce statements consistent with some portion of his testimony. This argument runs headlong into our precedent requiring some degree of fit between the alleged fabrication and the prior statement, as well as the Supreme Court's admonition

that "[p]rior consistent statements may not be admitted to counter all forms of impeachment or to bolster the witness merely because she has been discredited."  Tome v. United States, 513 U.S. 150, 157 (1995).

In arguing that a more generalized attack on credibility may open the door to prior consistent statements, Chiu points us to United States v. Washington, 434 F.3d 7 (1st Cir. 2006).  There, we found no abuse of discretion in a trial court's admission of a prior consistent statement where the party opposing its admission "had suggested that the entirety of [the declarant-witness's] testimony on direct examination had been false."  Id. at 15. However, closer review of Washington reveals that it does not support the broad door-opening theory for which Chiu invokes it.

A critical component of the testimony presented by the witness there concerned the identity of an individual from whom he had purchased drugs.  Id. at 14.  Cross-examination of the witness indeed levied "a charge of fabrication which went to all of [the witness]'s testimony," painting him as "a habitual liar" with "a motive to lie about anything and everything in order to please the DEA."  Id.  But that examination also suggested the witness specifically fabricated "his testimony about the name of the drug dealer."  Id. at 14 & n.11.  The government then introduced the challenged evidence: the declarant's contemporaneous and consistent report to law enforcement naming the person who had

- 16 -

sold him the drugs.  Id.  Thus, there was no serious question that the witness had in fact been impeached on the specific subject of the rehabilitative, prior consistent statement, even if the cross-examination also levied indiscriminate charges of fabrication. Here, by contrast, the government's broad attacks on Chiu's credibility did not also specifically home in on Chiu's assertions that Anderson could occasionally access his computer.[3]

Accordingly, the district court did not abuse its discretion by excluding Chiu's proposed evidence.

**III.**

For the foregoing reasons, the judgment of the district court is affirmed.

---

[3] Chiu also argues that certain statements made by the government during pre-trial conferences and at sentencing somehow levied the kind of fabrication charge that we could consider for the purposes of Rule 801(d)(1)(B), but a witness plainly cannot be impeached at trial by arguments made outside of that trial.